## CONERY et al. v. SWEENEY et al.

(Circuit Court of Appeals, Fifth Circuit. December 5, 1896.)

### No. 506.

**1. EQUITY—PARTIES—CORPORATIONS.**

Persons claiming to have been the equitable owners of a steamboat up to a certain period, and afterwards equitable owners of all the stock of a corporation to which she was conveyed, may maintain in their own names an action against a firm alleged to have had control of the boat, as her agent, during the entire period, for an accounting in respect to her earnings, and her proceeds after her sale, without making the corporation itself a party defendant.

**2. LACHES—SETTLEMENT.**

A delay of some three years in bringing suit for an accounting after an alleged settlement between the parties *held*, on the evidence, not to amount to laches.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

This suit was filed March 18, 1895, to compel an accounting by defendants to the complainants of the affairs of the steamboat Alto during the time complainants were her owners (from October 27, 1890, to February 27, 1891), during which time defendants were the agents of said boat, receiving all her earnings, and paying some of her bills, and an accounting of 72 shares of the Alto Transportation Company, belonging to complainants, after said boat was sold to said corporation for said stock, and which remained in the hands and under the control of defendants under power of attorney from the complainants. The original bill, in substance, alleged that on the 27th day of October, 1890, complainant T. C. Sweeney bought the steamboat Alto from one Hamilton for $6,800 (part cash and part notes), for himself and his son, C. H. Sweeney, the other complainant, taking the title to the same in his own name, which notes were payable at the commercial house of defendants, and were to be paid by them from the earnings of said boat; that immediately on said purchase said boat was chartered to the Ouachita Consolidated Line for two years, and that while thus situated all of said charter money was collected by said defendants; that shortly after said purchase said E. Conery advised said T. C. Sweeney to put said steamboat in a corporation, saying that said T. C. Sweeney could, with his son, said C. H. Sweeney, be the owner of all the stock therein, with the exception of a few shares necessary to qualify officers of the corporation, but that said T. C. Sweeney could have entire control and could and would be president thereof, and that he (Conery) would procure a Mr. Woolfolk, of Louisville, Ky. (under whose laws, it was suggested, said corporation should be formed), to act as secretary at the domicile of said corporation, and he would only have to pay him $100 per year for his services, and he (Conery) would have all of said matters attended to for him; that, having implicit faith in the judgment and integrity of said Conery, he consented to the formation of said corporation, and articles of incorporation were drawn up under the direction of said Conery, and were signed in the city of New Orleans, November 25, 1890, by said T. C. Sweeney and C. H. Sweeney, and by L. R. Woolfolk and R. L. Woolfolk in Louisville, Ky., and said corporation was called the Alto Transportation Company, whose stock was 75 shares, of the par value of $100 each, and to which corporation said steamboat Alto was on the 27th day of February, 1891, duly sold for the above shares of stock, 36 shares of which were issued to complainant T. C. Sweeney, 36 shares to complainant C. H. Sweeney, and 1 share to each of said Woolfolks, and 1 share to defendant Conery; that when said stock was issued to complainants, and in their name, it came to them from the hands of said Conery, who requested that they deliver the same to him or his house as collateral security for any sum said T. C. Sweeney might owe said Conery and his house by reason of any advances he or said house might have to make in paying said purchase notes,

agreeing that when said advances were paid said stock would be returned complainants, and that with this understanding and agreement they gave said shares of stock to said Conery as security, but not otherwise; that said steamboat continued under said charter, with defendants, as agents of said boat and her owners, collecting all of her earnings, and looking after and managing the interest of complainants in said corporation, until April, 1892, when she was sold for $8,200, which was paid to defendants, who received all the revenues and earnings of said boat during the time she was running, as the property of said T. C. Sweeney, as well as all the profits and dividends coming to the stock in said corporation belonging to complainants; that said Thomas C. Sweeney always believed he was the president of said corporation until said sale of said boat, and undertook to sign the bill of sale, when he was for the first time informed by Conery that he was not such president, but he (Conery) was; that they were informed that Conery, after securing said shares of stock, without notice to them, and without their knowledge and consent, surrendered their said shares of stock to the company, and had other shares issued to himself, from which he or his house have received large amounts of money, but the exact amount whereof is unknown to them; that after the delivery of said stock to defendants as collateral as aforesaid, with authority to manage the same, said E. Conery, without the knowledge or consent of complainants, and without knowing he was president of said company, instructed said Woolfolk to vote him a salary of $200 per month as president of said company, and all in violation of his agreement that said T. C. Sweeney was to be president, in pursuance of which said Conery claimed to have received, sometimes $2,600, and at other times $3,000, to which it is alleged he was not entitled; that they have applied to said defendants, without avail, for an accounting of the affairs of said boat while she stood in the name of said T. C. Sweeney before the sale to the company, and for an accounting of all moneys received by defendants for said 72 shares of stock after the sale of said boat to said corporation. And the prayer of said bill is for an accounting of the affairs of said boat from October 27, 1890, to the time of her sale to said corporation, on the 21st of February, 1891, and for an accounting of all moneys and profits received on said 36 shares of stock of said T. C. Sweeney, and said 36 shares of stock of said C. H. Sweeney, and for judgment for such an amount as may be due on such accounting, and for costs and general relief. To this bill defendants demurred, and, for cause of demurrer, showed "that it appears by the bill that it is necessary that the Alto Transportation Company, a corporation therein mentioned, and concerning whose doings the principal complaint appears to be made in the bill, and which should be represented in this suit, is not made a party thereto, and no proper hearing and decree can be made without the presence of said company."

This demurrer the court sustained, unless within five days the complainants amended their bill by striking therefrom the allegations concerning the salary of Conery as president of said Alto Transportation Company. This amendment was duly made, and thereupon an answer was filed, which, in substance, alleged that said boat was really purchased from Hamilton for defendants in order to be put in the Ouachita Line, and the title was put in Sweeney's name, at his request, who was without means, the object being to give complainants employment and good salaries; that the company was formed in Kentucky, to which the boat was sold for 75 shares of stock, of which 36 were nominally issued to T. C. Sweeney, and 36 nominally issued to C. H. Sweeney, said nominal title being in the name of the complainants for the purpose aforesaid, and because defendants did not wish to take it in their own names, and that said shares were forthwith delivered to defendants with the authority from the complainants to transfer the same, and that each of the complainants, in writing, authorized said E. Conery, Sr., to transfer the same to any person; that said Conery was duly made president, and he and his firm gave said company the benefit of their experience, and kept said full accounts of the doings of said corporation; that, when said shares of stock were delivered to defendants, complainant T. C. Sweeney entered into a verbal agreement with defendants that when the amount due them for amounts advanced for said purchase and all other obligations should be paid, and the boat was free of debt, then one-half the stock of the company should be transferred to said T. C. Sweeney,

it being implied in that case the boat should be sold by the company, the same being the only property of the corporation, said T. C. Sweeney should secure one-half the net balance remaining from the price; that an account was opened, in which were duly entered receipts and expenditures; that said boat was duly sold; that thereafter said account was balanced on the 25th April, 1892, and it was found that there was coming to defendants $1,189.97, and a like amount to complainants, which latter sum was received by said T. C. Sweeney in full settlement of said understanding and agreement; that said boat, the only asset of said company, having been sold, said shares of stock have no value, and are mere vouchers; that complainants have received all that is due them; that neither of defendants are indebted to them or either of them; that said account has been exhibited to complainants; that they have had the benefits of the facts therein set forth, "accepted" the benefits of the situation and the proceeds of said accounts, and are each estopped to make the demands which they made in said suit. Upon replication being filed, an examiner was appointed, and the taking of the evidence begun; and after it was about concluded an admission was made, which is in the following words: "It is admitted that the amount shown to be due on the 23d of April, 1892, on the accounting by the defendants herein, is $3,638.77, including an item of $965.50, known as the 'Contingent Fund of the Steamboat Alto,' and that said sum of $3,638.77 now belongs either to the complainants or the defendants; that, according to the contention of complainants, 36/75 thereof belongs to C. H. Sweeney, and 36/75 to T. C. Sweeney, and according to the contention of defendants the whole of said sum belongs to defendants. It is further admitted that, independent of the above,—that is, on private account,—said T. C. Sweeney owed defendants on the 23d of April, 1892, $1,672.72, which should be deducted from the above claim of T. C. Sweeney of 36/75 of the above amount of $3,638.77 in case the same should be allowed to said T. C. Sweeney, and, in case said 36/75 should not be allowed said T. C. Sweeney, then nothing would be due to defendants."

W. W. Howe, for appellants.
Richard De Gray, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and MAXEY, District Judge.

McCORMICK, Circuit Judge.    A careful inspection of the record in this case discovers no ground for reversing the judgment of the circuit court.    The complainants sought no recovery against the corporation.    The only allegation that affected the corporation in any way was stricken out, on demurrer, by the court.    The ruling of the court on that demurrer is not in conflict with the authorities cited by the appellants.    The vital issue, and the only substantial issue, in the case, was the equitable ownership, as between the complainants and the respondents, first of the steamer Alto, and afterwards of the stock issued by the Alto Transportation Company.    The respondents had already, and so long ago that they claimed that they were quieted by lapse of time, made their own adjustment of their business relations with the complainants in this matter.    Their claim that the complainants were guilty of laches in prosecuting their complaint is not supported by the proof, and the finding of the judge of the circuit court on the issue as to the ownership of the steamer and of the stock in the corporation is fully sustained by the proof.    The decree in other respects is supported by the agreement of the parties.    We conclude as we began, that we see no reason to set aside the decree of the circuit court, and it is therefore affirmed.